United States District Court
Southern District of Texas
**ENTERED**
April 11, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PATRICK BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:16-CV-7 |
| | § | |
| ARKOMA TANKS, LLC and HULLS | § | |
| ENVIRONMENTAL SERVICES, INC., | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

Defendants move under 28 U.S.C. § 1404(a) to transfer this case to the united States District Court for the Western District of Oklahoma. Dkt. No. 9. After considering the motion, response, Dkt. No. 13; reply, Dkt. No. 14; and applicable law, the Court grants the motion.

### I. Background

Plaintiff Patrick Brown ("Brown") commenced this civil action by filing his two-count complaint in the Corpus Christi Division of this Court on January 6, 2016. Dkt. No. 1. He names two defendants: Arkoma Tanks, LLC ("Arkoma Tanks") and Hulls Environmental Services, Inc. ("Hulls"). *Id.* ¶¶ 5–6. Brown does not state where he presently resides in his complaint or his response to the instant motion, but it is reasonable to infer that he does not presently reside in Texas or Oklahoma.[1] Both defendants have a principal place of business at the same address

---

[1] The signature block of Brown's complaint and response include a Florida mailing address for his counsel. Dkt. No. 1 at 7; Dkt. No. 13 at 4. The civil cover sheet accompanying Brown's complaint lists Osceola as Brown's county of residence. Dkt. No. 1-1 at 1. Neither Texas nor Oklahoma has an Osceola County, s*ee* Tex. Gov't Code §§ 25.0041–25.2512 (West 2016) (listing statutory county courts); 28 U.S.C. § 124 (listing all Texas counties in judicial districts of the United States); *id.* § 116 (same for Oklahoma); Florida does, however, *see* 28 U.S.C. § 89(b). Nevertheless, the Court need not, and does not, make a finding on where Brown resides. The Court determines only that it is reasonable to find for purposes of the instant motion that Brown does not presently reside in Texas or Oklahoma. *See Davis v. U.S. Bank, N.A.*, No. 3:12-CV-2756-L, 2012 WL 9334546, at *1 (N.D. Tex.

in Wilson, Oklahoma. *Id.* ¶¶ 4–6; Defs.' Ans. ¶ 4, Dkt. No. 4 (admitting allegations). Brown's complaint also states that Hulls "has full service facilities in Texas, Florida and Georgia." *Id.* ¶ 8, but Hulls disputes the characterization of those facilities as "full service," Defs.' Ans. ¶ 5 (admitting Hulls has a yard in each state). Arkoma Tanks "had over $500,000 in sales at its Pawnee, Texas, location" in 2015, Compl. ¶ 9; Defs.' Ans. ¶6 (admitting allegation). Defendants employ workers in Texas and Oklahoma and do business in Bee County, Texas, according to Brown's complaint. *Id.* ¶¶ 10–11, 19.

In his first count, Brown brings a claim for failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. *See* Compl. ¶ 39. He asserts that Defendants paid him an hourly wage and overtime wages from approximately January 2013 through January 2015. Compl. ¶ 24. According to Brown, the regular rate used to compute his overtime wages should have included commissions he earned, but it did not. *See id.* ¶¶ 25–30 (alleging that, "[e]ven though Plaintiff earned commissions neither Defendant used the commission payments to calculate the overtime rate); *see also* Defs.' Ans. ¶ 21 (admitting only that "at some point during Plaintiff's employment, Arkoma did not use commissions in computation of a regular rate"). Defendants respond that "commissions were paid sporadically." Defs.' Ans. ¶ 19.

Brown's second count arises under the Oklahoma Labor Act. *See* Compl. ¶¶ 57–64 (citing 40 Okl. St. § 165.9) (other citations omitted). Brown alleges under the heading of count two that "[i]n 2015, [he] was entitled to 2% of sales from the Elk City yard." *Id.* ¶ 42. Brown avers that Defendants paid him 2% of sales for the months of January, February, and March 2015 but did not pay him commissions owed for April–September 2015. *Id.* ¶¶ 43–49.

Brown pleads that Arkoma Tanks and Hulls were his joint employers under the FLSA, *id.* ¶ 23, and that they were both his employers under the Oklahoma

---

Aug. 16, 2012) (relying on county of residence listed on civil cover sheet to transfer case under 28 U.S.C. § 1404(a)).

Labor Act, *id*. ¶¶ 55–56. Defendants, on the other hand, maintain that Arkoma Tanks was Brown's only employer during the relevant time period beginning in or around January 2013. Defs.' Ans. ¶¶ 19, 37.

In support of their motion to transfer, Defendants submit the affidavit of Teri Marshall ("Marshall"), their compliance officer. Dkt. No. 9 Ex. 1; *see also id*. ¶ 2 (stating role). Marshall states that Brown worked in Pawnee for Hulls in May–December 2011, but Brown did not work for Hulls or Arkoma Tanks again until August 2013 when Arkoma Tanks began employing him. *Id*. ¶¶ 3–4. According to Marshall's affidavit, Brown performed work for Arkoma Tanks in Oklahoma from August 2013 until October 2015. *Id*. ¶¶ 5–6. Finally, Marshall states that "[w]hile employed with Arkoma Tanks, . . . Plaintiff's job duties included acting as a yard manager for a yard in Elk City, Oklahoma — which is within the Western District of Oklahoma." *Id*. ¶ 8.

Defendants also rely on two pay stubs for Brown dated October 31, 2014 and October 16, 2015. Dkt. No. 9 Ex 2. The pay stub dated October 16, 2015, lists a street address in St. Cloud, Florida, for Brown. *Id*. at 2. The other stub gives a post office box in Elk City, Oklahoma, as Brown's address. *Id*. at 1.

## II. Analysis

Brown concedes that this action could have been brought in the Western District of Oklahoma. Resp. Mot. Transfer Venue 3, Dkt. No. 13. He argues that Defendants have failed to carry their burden to show that the Western District of Oklahoma is clearly more convenient. *Id*. at 3–4. Considering the public and private interest factors under 28 U.S.C. § 1404(a), the Court finds that Defendants have made the necessary clear showing on this record that the destination venue "is clearly more convenient" than this one. *In re. Volkswagen Corp. of Am.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *Volkswagen II*).

### A. Legal Standard

Under 28 U.S.C. §1404(a), a case may be transferred to another district court in which it could have been brought "[f]or the convenience of parties and witnesses, in the interest of justice . . . ." 28 U.S.C. § 1404(a) (West 2016). When deciding a motion to transfer venue under section 1404(a), the Court considers the private and public interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *Volkswagen II.*, 545 F.3d at 315; *see also Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981)) (listing these factors when describing typical analysis under § 1404(a)). "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.' " *Volkswagen II.*, 545 F.3d at 315 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter *Volkswagen I*)). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.' " *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alteration in original). These factors are "not necessarily exhaustive or exclusive . . . [and] 'none . . . can be said to be of dispositive weight.' " *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)) (second alteration in original). The party seeking transfer has the burden to clearly show good cause for the transfer. *Id.* That is, the moving party has the burden to show that "the transferee venue is clearly more convenient" than the plaintiff's chosen forum. *Id.*

Brown argues in his response that the Court should factor his choice of this forum into the transfer analysis. "Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), [the Supreme Court has] termed their selection the 'plaintiff's venue privilege.' " *Atl. Marine*, 134 S. Ct. at 581–82 (quoting *Van Dusen*

*v. Barrack*, 376 U.S. 612, 635 (1964)) (footnote omitted).  The Fifth Circuit has held that "[a] plaintiff's choice of forum . . . is not an independent factor within the . . . § 1404(a) analysis."  *Volkswagen II*, 545 F.3d at 314 n.10.  Instead, the allocation of the burden on a motion under section 1404(a) adequately accounts for the plaintiff's choice of forum.  *See id.* (plaintiff's choice of forum "nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer").

    B.  <u>Venue in Destination District</u>

As a threshold matter, the Court must determine that this action "might have been brought" in the Western District of Oklahoma.  *Volkswagen II*, 545 F.3d at 312.  Defendants assert that this action could have been brought in the Western District of Oklahoma under either 28 U.S.C. § 1391(b)(1) or (2).  Mot. Transfer Venue 3–4, Dkt. No. 9.  As the Court determines that venue would be proper under § 1391(b)(1), it need not analyze venue under § 1391(b)(2).

The general venue statute permits a civil action to be brought, inter alia, in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1) (West 2016).  Under §1391(c) and (d), whether Defendants' contacts would subject it to personal jurisdiction determines there residence for purposes of § 1391(b)1) and (2).  *See id.* § 1391(d) (West 2016) ("[I]n a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ."); *Kervin v. Supreme Serv. & Specialty Co., Inc.*, No. 2:15-CV-102, 2015 WL 1540157, at *3 (S.D. Tex. Apr. 7, 2015) ("venue is proper in any district where the defendant resides" under § 1391(c) and (d)).  Brown alleges, and Defendants admit, that the headquarters of Hulls and Arkoma Tanks is located within the territorial jurisdiction of the Western District of Texas in Wilson, Oklahoma.  Compl. ¶¶ 4–6;

Defs.' Ans. ¶ 4. On their face, Brown's allegations of Defendants' corporate headquarters allege minimum contacts with the Western District of Oklahoma. *See, e.g., Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 805 (E.D. Tex. 2014) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n. 19 (2014, and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011)) (explaining that the contacts required by the general jurisdiction prong of the personal jurisdiction inquiry "means that the defendant corporation must either be headquartered in the forum state, incorporated in the forum state, or have some equivalent presence in the state"). Additionally, in his response to the instant motion, "Brown concedes that his case could have been filed in Oklahoma." Resp. Mot. Transfer Venue 3. Brown's concession provides an independently sufficient reason to conclude that this action could have been brought in the Western District of Oklahoma. *See, e.g., Knapper v. Safety Kleen Sys., Inc.*, No. 9:08-CV-84-TH, 2009 WL 909479, at *5 (E.D. Tex. Apr. 3, 2009) (relying on parties' concession that action could have been brought in two proposed destination districts without further analysis). Accordingly, the Court concludes that this action could have been brought in the Western District of Oklahoma under § 1391(b)(1).

    C. <u>Sufficiency of Record</u>

Defendants assert in the instant motion that all of the documents and witnesses relevant to this case are located in the Western District of Oklahoma. Mot. Transfer Venue 5. Brown responds that Marshall's affidavit does not establish "who [Defendants] would produce as witnesses, where those witnesses are located, where Defendants' records are kept, and whether [their] witnesses would be able to attend trial in South Texas." Resp. Mot. Transfer Venue 4. Brown accurately characterizes Marshall's affidavit. Dkt. 9 Ex. 1. Marshall states that Brown performed work for Arkoma Tanks in Oklahoma from August 2013 through October 2015, but Marshall identifies no potential witnesses or specific records. *See id.* ¶¶ 4–8.

Nevertheless, Marshall's affidavit, Brown's complaint, and the pay stubs in the record lend sufficient factual support to Defendants' assertions in their motion to support a § 1404(a) transfer. Marshall's unchallenged affidavit states that Brown worked for Arkoma Tanks in Oklahoma from August 2013 through October 2015, and his duties included managing a "yard' in Elk City, Oklahoma. Dkt. No. 9 Ex. 1 ¶¶ 5–8. Brown avers in count two of his complaint that he was "entitled to 2% of sales from the Elk City Yard," Compl. ¶ 42. He characterizes count two as a claim for commissions he is owed. *Id.* ¶¶ 1, 18. Under the heading of FLSA claim, Brown alleges that his commissions should have been used to compute the regular rate from which his overtime pay from January 2013 through January 2015 was calculated. *Id.* ¶¶ 24–30. Brown's pay stub dated October 31, 2014, corroborates these assertions by showing his address during this period as a post office box in Elk City, Oklahoma. Dkt. No. 9 Ex. 2 at 1. Read together, Marshall's affidavit, Brown's complaint, and the pay stubs establish that the Western District of Texas "is the location of the alleged wrong." *Doe v. Catholic Soc'y of Religious & Literary Educ.*, No. C-09-33, 2009 WL 972978, at *3 (S.D. Tex. Apr. 9, 2009) (finding public interest factors favored transfer for this reason based on analysis of the complaint alone). Thus, this record "gives no indication that this case has any connection at all to Corpus Christi, Texas" as pleaded.[2] *Id.*

### D. Private Interest Factors

Defendants do not address the fourth private interest factor. *See* Mot. Transfer Venue 5–7. Accordingly, the Court finds it to be neutral. *See Volkswagen II*, 545 F.3d at 317 (considering only contested public interest factors). The Court finds that the three other private interest factors favor transfer.

The first private factor, access to sources of proof, favors transfer. Defendants assert that the physical evidence and their witnesses with information relevant to Plaintiff's complaint are located in Oklahoma. Mot. Transfer Venue 4.

---

[2] Brown's complaint states that his claims concern events that occurred from January 2013 through October 2015. *See* Compl. ¶¶ 24, 44—59. Defendants' allegation that Brown was hired in Pawnee, Texas, in 2011 does not, therefore, alter the § 1404(a) analysis. *See* Resp. Mot. Transfer Venue 3.

Marshall's affidavit statement that the Elk City yard Brown managed is located in the Western District of Texas corroborates their assertion. Dkt. No. 9 Ex. 1 ¶ 8. Brown's allegations that Defendants' headquarters is located in Wilson, Oklahoma, Compl. ¶¶ 4–6, do as well. The Court draws the reasonable inference that records related to the payment of Brown's overtime wages and commissions for the facility in Elk City, Oklahoma, are located in either Wilson or Elk City. *Cf. Transcon. Ins. Co. v. Coreslab Structures (OKLA) Inc.*, No. 3:01-CV-2589-M, 2002 WL 570880, at *3 (N.D. Tex. April 12, 2002) (drawing inferences about location of records based on ordinary business practices: "It is unclear from the briefing where the relevant books and documents are located. Presumably, Coreslab's records are at its main office and with its coverage counsel in Oklahoma; Transcontinental's records are at its main office in Illinois . . . ."). Indeed, the record, even seen in a light favorable to Brown, discloses no known sources of proof located in the Southern District of Texas. *See Volkswagen II*, 545 F.3d at 316 (holding this factor favored transfer where "no known source of proof [was] located" in source court); *Catholic Soc'y*, 2009 WL 972978, at *3.

The second private factor also favors transfer because Defendants' non-party witnesses in the Western District of Oklahoma will be beyond the subpoena power of this Court. *See Volkswagen II*, 545 F.3d at 316 (holding factor favored transfer even though district court had discretion to deny motions to quash subpoenas); *see also* Fed. R. Civ. P. 45(c). As already explained, the parties concede that this action could have been filed in the Western District of Texas, which has absolute subpoena power over Defendants' nonparty witnesses. See Volkswagen II, 545 F.3d at 316 (holding second factor favored transfer because "a proper venue that does enjoy absolute subpoena power for both depositions and trial . . . is available"); *see also* Fed. R. Civ. P. 45(c)

Regarding the cost of attendance of Defendants' willing witnesses located in the Western District of Oklahoma, the Fifth Circuit has established a 100-mile rule to determine the inconvenience to witnesses under the third private interest factor:

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. This method of assessing inconvenience recognizes that "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."[3] *Volkswagen II*, 545 F.3d at 318. Defendants represent that the distance from Wilson, Oklahoma to Corpus Christi, Texas is nearly five times the distance from Wilson to the federal court to which witnesses would likely have to travel in the Western District of Oklahoma. Mot. Transfer Venue 6. Brown does not challenge Defendants' representation. Thus, the third public interest factor proportionally favors transfer. *See Volkswagen I*, 371 F.3d at 204–05.

The second and third factors do not weigh in favor of transfer as heavily as they would had the record provided greater specificity about potential witnesses, however. Defendants have not attempted to estimate how many witnesses would likely have to travel from Wilson, hampering this Court's ability to assess the severity of the burden under the second and third factors. *See Volkswagen II*, 545 F.3d at 317 (considering list of potential witnesses and witness affidavits stating that travel would inconvenience them); *Transcon. Ins. Co.*, 2002 WL 570880, at *2. In sum, the Court finds that one private interest factor favors transfer, two slightly favor transfer, and one militates neither for nor against transfer.

    E. Public Interest Factors

---

[3] The 100-mile rule has not always been rigidly applied. *See, e.g., In re Genentech*, 566 F.3d 1338, 1344–45 (Fed. Cir. 2009) (citing a series of district court cases and discounting inconvenience to witnesses located in Germany because they "will be traveling a great distance no matter which venue the case is tried in and will be only slightly more inconvenienced by the case being tried in California than in Texas"). The cases in which the direct-relationship rule has been relaxed in this manner, however, involve witnesses located so far from the transferee district that their inconvenience would be completely dispositive of this factor. *See id.* (citing cases involving witnesses from England, Finland, Europe, and Japan). No witnesses in this case reside so far from either the transferor or transferee district.

Defendants assert that the first public interest factor—the administrative difficulties flowing from court congestion—is neutral, and the Court so finds. Mot. Transfer Venue 6. The second, third, and fourth public interest factors, however, favor transfer, according to Defendants. *Id*. at 6–7. Brown does not address the public interest factors in his response. The Court finds that Defendants have shown that the second and third public interest factors favor transfer.

Again, Marshall's affidavit, the pay stubs, and Brown's complaint establish that Brown's claims stem from work he performed in Oklahoma for a company or companies headquartered in that state. Brown, who does not presently reside in Texas, has demanded a jury trial. Compl. 1. Because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation," the interest in having localized disputes decided at home favors transfer on this record. *Volkswagen I*, 371 F.3d at 206 (quoting *Gilbert*, 330 U.S. at 501) (alteration in original); *see Volkswagen II*, 545 F.3d at 317–18.

Brown's FLSA claim presents a question of federal law that does not in and of itself raise concerns under the third public factor, the familiarity of the forum with the governing law. *See Kervin*, 2015 WL 1540157, at *6 (finding in putative FLSA collective action with no state-law claims that "[a] Louisiana federal court would be just as familiar with the FLSA and just as competent to hear this type of FLSA claim as this Court"). The Western District of Oklahoma, however, has likely gained more familiarity with the Oklahoma Labor Act than this Court. *See, e.g., Bunnett & Co., Inc. v. Dores*, No. A-15-CV-1104 LY, 2016 WL 247669, at *7 (W.D. Tex. Jan. 20, 2016) ("Surely, a United States District Court in Texas is more familiar with Texas statutes than one in California."); *Blitz USA, Inc. v. Liberty Surplus Ins. Co.*, No. 3:11-CV-0034-G, 2011 WL 1602718, at *4 (N.D. Tex. Apr. 27, 2011) (rejecting argument that record was not sufficiently developed to decide choice-of-law issues and holding public interest factors favored transfer because plaintiff pleaded bad-faith claim under Oklahoma law in complaint). Defendants, however, identify no specific conflict-of-law problems or difficulties that might

occasion the application of foreign law here, and the Court consequently finds the fourth public factor to be neutral.

### III.   Conclusion

For the foregoing reasons, the Court finds that three private and two public interest factors favor transfer and that the remaining factors are neutral. Weighing these factors, the Court finds that Defendants have carried their burden to show that transfer is clearly for the convenience of the parties and witnesses and in the interest of justice, especially given the minimal connection this forum has to the claims pleaded in this action on this record. *See Volkswagen I*, 545 F.3d at 315; *Catholic Soc'y*, 2009 WL 972978, at *3.

The Court, therefore, **GRANTS** Defendant's motion to transfer under 28 U.S.C. § 1404(a), Dkt. No. 9, and **ORDERS** this case transferred to the United States District Court for the Western District of Oklahoma.

SIGNED this 8th day of April, 2016.

_____
Hilda Tagle
Senior United States District Judge